IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ELIZABETH JENNINGS**                                                                       **PLAINTIFF**

VS.                                    No. 4:22-cv-00860 PSH

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                                                        **DEFENDANT**

**ORDER**

Plaintiff Elizabeth Jennings ("Jennings"), appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance benefits ("DIB"). Jennings contends the Administrative Law Judge ("ALJ") erred in three ways: (1) by failing to include any limitations related to migraines when assessing her residual functional capacity ("RFC"); (2) by failing to include moderate limitations in the RFC based upon the medical opinions of Teresa Kramer, Ph.D. ("Kramer") and Dr. Marilyn Jordan, Ph.D. ("Jordan"); and (3) by failing to properly evaluate her credibility. The parties have ably summarized the testimony given at the telephonic administrative hearing conducted on July 16, 2021. (Tr. 38-57). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial

evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from February 28, 2018, the alleged onset date, through September 19, 2022, the date of the ALJ's decision. The Court finds merit in Jennings' first claim for relief and remands this case for further consideration.

*The Administrative Hearing:*

Jennings, who was 31 at the time of the hearing, responded first to questions posed by the ALJ. She stated she had a high school education and "some college," and lived with her husband. (Tr. 42). Jennings' three children lived with her and her husband the majority of the time, and two stepchildren lived with them on alternating weeks. Jennings previously worked as a secretary at a church and a teacher of two-year olds at a Montessori school. She quit her teaching job after passing out at work. She explained that her POTS[1] (postural orthostatic tachycardia syndrome) was "really bad at that point" and she was in the process of being diagnosed with lupus and weighed only 105-108 pounds. (Tr. 46).

Jennings described her abilities, testifying she could drive "most of the time"

---

[1] POTS, according to the Cleveland Clinic, is "a condition that causes your heart to beat faster than normal when you transition from sitting or lying down to standing up." https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots.

but not when having a "passing out episode." (Tr. 43). Long driving trips caused her knees and hips to hurt. She said she could start the laundry, could cook some while seated, and do limited cleaning ("I do what I can when I can."). (Tr. 43). She stated she had difficulties walking, and addressed this with crutches, a scooter (which she used regularly at her house), and a wheelchair. Jennings estimated she could not lift and carry much, nor could she sit for a long period. Jennings was receiving counseling "for a while" but this was discontinued during after the onset of COVID. (Tr. 44).

Jennings reported a long list of medications she took regularly: Midodrine, propranolol, hydrocodone, diclofenac, omeprazole, sucralfate, famotidine, CellCept, natoxymone, prednisone, tactinal, bupropion, buspirone, an injectable called AJOVY taken monthly, and topamax. She also listed medications taken as needed, such as sumatriptan, diazepam, Zofran, and Varubi. Jennings stated she suffered from side effects, including stomach upset, wooziness, fatigue, and concentration and memory issues.

Jennings identified brain fog and memory issues stemming either from POTS or lupus. She also described concentration and focus deficits. For example, she described trouble focusing on and completing recipe instructions. She stated she had no problems interacting with others.

In response to further questions from her attorney, Jennings indicated she was diagnosed with migraine headaches in 2019 and had at least nine headaches a month at one point. Typically, she found it took 1-3 days to fully recover from the migraine. The injectable prescription medication she was taking at the time of the hearing helped her, making the migraines "a little better." (Tr. 49). Jennings also described receiving nerve blocks for her right hand and left leg, and she reported taking pain medication daily. Specifically, she said picking up anything caused pain to radiate from her hand to her arm and shoulder, and that any repetitious movement caused her hands to swell.

Dwight Turner ("Turner"), a vocational expert, testified, assessing Jennings' past work as a nursery school attendant (the Montessori teaching position) as light, semi-skilled work and the secretary job as sedentary, skilled work. The ALJ posed a series of hypothetical questions to Turner, first asking him to consider a hypothetical worker of Jennings' age, education, and experience, who could perform light work but could only occasionally stoop, crouch, crawl, and kneel, and who would be limited to interpersonal contact incidental to the work performed, where the complexity of the tasks could be learned by demonstration or repetition within 30 days with few variables, little judgment, and where the supervision required was simple, direct, and concrete. Turner responded that such a worker could not perform Jennings' past relevant work but could perform other jobs, such as motel cleaner or marker. The ALJ

then altered the hypothetical, substituting sedentary for light in the exertional level but otherwise retaining the restrictions. Turner stated such a worker could perform the jobs of table worker and label cutter. If the hypothetical were to include the worker missing 2-3 days per month, Turner opined that no jobs would be available. Jennings' attorney inquired whether work would be available if the worker required extra breaks and was off-task for 15-20% of the workday, or if the worker needed reminders due to forgetfulness and was off-task for up to 15% of the day. No jobs existed if these limitations were present. (Tr. 52-56).

*ALJ's Decision:*

In his August 11, 2021, decision, the ALJ determined Jennings had the severe impairments of lupus, migraines, neurocognitive disorder, depression, and anxiety. The ALJ also found Jennings had the medically determinable impairments of complex regional pain syndrome and POTS. The ALJ found the complex regional pain syndrome was managed with nerve blocks and medications, was largely stable, and no assistive device was prescribed or medically necessary. Regarding POTS, the ALJ found this impairment was manageable with medications. As a result, the ALJ deemed the complex regional pain syndrome and POTS non-severe impairments.

The ALJ found Jennings did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ

specifically addressed Listing 14.02 (systemic lupus erythematosus). Noting that although there is no listing criteria for headaches, it is possible for headaches to meet a listing by themselves or in combination with another medically determinable impairment (e.g., Listing 11.02 for epilepsy). The ALJ found Jennings' headaches did not equal in severity and duration the criteria to meet Listing 11.02.

The ALJ found Jennings' mental impairments did not, either singly or in combination, meet Listings 12.02, 12.04, and 12.06. In reaching this conclusion, the ALJ considered the four broad areas of functioning found in 20 C.F.R., Part 404, Subpart P, Appendix 1, finding Jennings had a moderate limitation in three of the four functional areas: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace ; and (3) adapting or managing oneself. The ALJ determined Jennings had a mild limitation in interacting with others. The ALJ also found the evidence failed to establish the "paragraph C" criteria because the evidence did not indicate Jennings' mental impairments resulted in marginal adjustment or minimal capacity to adapt to changes in the environment or to demands that are not already a part of daily life.

The ALJ assessed Jennings to have the RFC to perform light work with the restrictions which mirrored those detailed in the initial hypothetical question posed to Turner. The ALJ assessed Jennings' subjective allegations, finding her statements

"not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26).

The ALJ summarized the medical evidence concerning migraine headaches, lupus, depression, and anxiety, highlighting the many medications taken by Jennings and their efficacy.  Regarding her migraine headaches, the ALJ wrote:

> The claimant took Imitrex for migraines with good relief and her headaches were stable through much of the period.  Her physical and neurological exams were consistently normal.  However, in 2020, she reported having more than 15 migraines a month, lasting four or more hours.  She received Botox injections for migraines in August and November 2020, without significant improvement.  In March 2021, she reported ongoing migraines aggravated by allergies, anxiety, bright lights, stress, Valsalva, and weather.

(Tr. 26).

The ALJ also reviewed the opinions in the record, including the Treating Physician's Migraine Headache Form executed in April 2020 by Robert R. Silzer, M.D. ("Silzer").  Silzer opined Jennings would miss about one day of work per week due to migraines.  The ALJ concluded Silzer's opinion was unpersuasive, in part because it was a checklist, unsupported by explanation, and internally inconsistent.  The ALJ also considered the opinions offered by the state agency psychological consultants (Kramer and Jordan), finding them persuasive, supported internally by explanation and consistent with the evidence as a whole.  Finally, the ALJ noted a September 2015 psychological consultative examination by Mike Parker, Ph.D.,

finding it "minimally persuasive" and "remote in time." (Tr. 29).

The ALJ found Jennings unable to perform her past relevant work. Relying upon Turner's testimony the ALJ concluded Jennings could perform the jobs of motel cleaner and marker. Accordingly, the ALJ decided Jennings was not disabled. (Tr. 19-32).

*Jennings' First Claim – the ALJ failed to include any limitations related to migraines when assessing her RFC*

The treatment records for migraines during the relevant period are informative. In March 2019, Jennings complained to Silzer of worsening migraines. Silzer noted Jennings was using Imitrex with good relief. (Imitrex, also called sumatriptan, was an abortive medication, used to address symptoms at the onset of the migraine, and not a preventative medication.) Silzer diagnosed Jennings with intractable chronic migraines and instructed her to call if the abortive medication was ineffective or if the headaches worsened. (Tr. 740-742). Jennings saw Silzer again in August 2019, and she was advised to continue with Imitrex and Topiramate (a medication used as a preventative to migraines). See https://en.wikipedia.org/wiki/Topiramate. Jennings was again instructed to call if her headaches worsened. (Tr. 1282-1284).

Jennings saw Silzer again in December 2019, and reported that her migraines began ten years earlier, rated the severity at 3 on a 1-10 scale, and that she "is

improving." (Tr. 753). Silzer continued with Topiramate and Imitrex, as needed, and Jennings was to call "if abortive medication ineffective for other options and call if headaches worsen." (Tr. 755).

In April 2020, Silzer executed the Treating Physician's Migraine Headache Form stating Jennings would miss about one day of work per week due to migraines. (Tr. 444-445).

At her June 2020 visit, Jennings rated the severity at 6 and reported her symptoms as unchanged. A monthly injection of Aimovig was added to the Topiramate with the goal of tapering and ceasing Topiramate "to mitigate memory deficits." (Tr. 1537). Jennings was to follow up in five months.

Less than two months later, in August 2020, Jennings presented to Silzer for her first treatment with Botox. Her history described a 12 year history of "severe chronic migraine headaches." (Tr. 1540). At that time, Jennings reported more than 15 migraines each month lasting for four or more hours. Silzer was optimistic that the Botox would be effective and that "as her migraines improve, she will be able to taper and stop topiramate. I think that it is causing some of her cognitive problems." (Tr. 1545). A second Botox injection occurred in November 2020, when Jennings rated the severity at 10, reported that her symptoms unchanged, and, stated she was having 15 migraines per month with a duration at four or more hours. Jennings was

instructed to continue with Aimovig and Topiramate. (Tr. 1553).

In March 2021, Jennings was seen again by Silzer. She rated the severity at 8, the frequency at 15 per month, and the duration at four or more hours. Silzer noted "[s]he has tried Botox x2, Aimovig injections, Topiramate, sumatriptan, and propranolol without significant reduction in migraines." (Tr. 1556). Silzer provided samples of Emgality and switched the "rescue drug" to eletriptan. (Tr. 1558).[2]

The ALJ's evaluation of Jennings' migraines is not supported by substantial evidence. As a result, the case must be remanded.

The ALJ's portrayal of "stable" migraines throughout much of the period is belied by the objective medical evidence, as recited above. In particular, Silzer's records show Jennings struggling with migraines for at least roughly two years, from March 2019 to 2021. Silzer was also struggling during this period, prescribing multiple drugs and procedures, and conceding in March 2021 that the various attempts had not succeeded. It remains to be determined if Jennings and Silzer have found a treatment regimen that resolves her migraines, and the ALJ on remand must explore if this is the case, as well as addressing what restrictions, if any, must be in place if the migraines have not resolved. In addition, the ALJ's reliance upon normal physical

---

[2] In May 2021, Jennings went for a wellness check at PrimeCARE. Although she did not complain of migraines, she reported that she continued to take Emgality (the once-monthly migraine preventative) as well as Topiramate and Imitrex. (Tr. 1747-1748).

and neurological exam results is misplaced. *See Teabeau v. Kijakazi,* 2022 WL 4598672, at *5 (E.D. Mo. Sept. 30, 2022) (normal neurological exams are not inconsistent with debilitating migraines).

In summary, the RFC reached by the ALJ failed to adequately consider her migraine headaches and omitted any limitations (e.g., absenteeism, noise or light limits) tied to Jennings' migraines. On remand, the ALJ should more thoroughly consider her history of migraines, the current status of her migraines, and how the migraines may affect the RFC.

The Commissioner's final decision is reversed, and the case is remanded. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 22nd day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE